# Richmond.

## PACE, ASSIGNEE v. FICKLIN'S EXECUTRIX AND ALS.

### March 23, 1882.

1. LIMITATION—*Appeal.*—An appeal from a final decree of 2d June, 1877, was allowed 8th May, 1879; but the bond was not given until 9th June, 1879.

HELD:

Under Code 1873, ch. 178, § 17, the appeal must be dismissed.

2. APPEAL—*Bond.*—Assignee in bankruptcy filed a bill in the State court, which was dismissed with costs; that assignee dying, his successor presented petition for appeal. It was insisted that no bond was required, as the appeal was partly to protect decedent's estate.

HELD:

Bond was necessary, as the second assignee had nothing, as such, to do with his predecessor's estate.

3. CHANCERY PRACTICE—*Final decree* —It was insisted that the decree was not final, because rendered in vacation and the judge afterwards gave written instructions to the clerk how to tax the costs.

HELD:

Decree, dismissing bill with costs, must be final; rendered in vacation, it takes effect from time it is entered of record; and the judge cannot afterwards impart to it a different character.

4. LIMITATION.—The period between death of first and appointment of second assignee will be included in the two years allowed for appeal. The statute does not begin to run until some person exists capable of suing; but having once begun, is not stopped by death or other disability.

Motion to dismiss an appeal taken by E. M. Pace, assignee of J. C. Voss, bankrupt, from decree rendered 2d June, 1877, by the judge of circuit court of Danville, in vacation, in suit in which Granville T. Pace, assignee of said bankrupt, was plaintiff, and William A. Lash and others were defendants. Appeal allowed 8th May, 1879; bond

given 9th June, 1879. Opinion of the court states the facts and points.

*E. Barksdale, E. E. Bouldin,* for appellants.

*W. W. Henry, Green & Miller,* for appellees.

STAPLES, J., delivered the opinion of the court.

This is a motion to dismiss an appeal upon the ground that the appeal bond was not given in due time. To sustain this motion the appellees show by the record that the decree appealed from was rendered on the 2d of June, 1877, and that the bond was not given until the 9th of June, 1879. And they rely upon the 17th section of chapter 178, Code of 1873, which provides that the appeal, writ of error, or *supersedeas*, shall be dismissed whenever it appears that two years have elapsed since the date of the final decree, judgment, or order, before bond is given, as prescribed by the statute.

In answer to this view, the appellant suggests several grounds, which it is claimed take the case out of the operation of the statute.

First, it is insisted, on his part, that under the act of January 26th, 1877, in computing the two years, the time which shall elapse between the date of presenting the petition to the appellate judge and the date of the delivery of the record to the clerk of the appellate court must be excluded. In this case the judge who allowed the appeal did not indorse upon the petition the time it was presented to him. But there is enough in the papers filed to show the fact, as well as the time of the delivery of the record to the clerk. The certificate of counsel asking for the appeal bears date the 5th May, 1879. A letter from that counsel shows that the record was sent by express to this

place the night of the 6th of May, so that it could not have reached the judge earlier than the 7th of May. The appeal was allowed the next day (the 8th), and on that day the record was handed to the clerk, who immediately on the same day notified the counsel of the allowance of the appeal, and that the writ tax must be paid. The tax was, however, not paid until the 2d of June, when the process was duly issued.

It is apparent from this statement that the record was in the hands of the appellate judge not exceeding two days. As already stated, the decree was rendered on the 2d of June, 1877, and the bond was given on the 9th of June, 1879. Allowing the appellant, therefore, the benefit of the excluded time, this bond still was not given within the two years, as required by the statute. This ground must therefore be rejected as untenable.

It is next insisted that no bond is necessary where the appeal is necessary to protect the estate of a decedent, convict or insane person. That here the suit was brought by Granville T. Pace, assignee of J. C. Voss, a bankrupt; that by the decree of the 2d of June, 1877, the original and amended bills filed by him were dismissed at his cost; that upon the death of Granville T. Pace, the appellant was appointed assignee in his place, and that the object, or one of the objects of this appeal, is to relieve the estate of Granville T. Pace of all liability for the costs decreed against him, and such being the object no bond could be properly required of the appellant by the express words of the statute. It may be a question whether the circuit court indeed intends to award costs against Granville T. Pace in any other character than that of assignee. The decree is certainly susceptible of that construction, but it is unnecessary to pursue that inquiry further, for it is very clear this is not an appeal to protect the estate of Granville T. Pace within the true meaning of the statute. Its

object and only object is to protect the estate of Voss, the bankrupt, for the benefit of creditors. This appears everywhere in the record, and in the petition for an appeal. The appellant is here as assignee, and only as assignee. He is not the personal representative of Granville T. Pace. He has nothing to do with that estate; he is in no way interested or concerned in it. If by the reversal of the decree the estate of Granville T. Pace shall be relieved of all liability for costs, the result will simply be collateral and incidental, in no way affecting the proposition that the appeal was taken solely in the interests of the bankrupt and his creditors.

It may be that an assignee in bankruptcy, upon grounds of public policy, ought not to be required to give an appeal bond. The same considerations which exempt a personal representative from giving such bond, doubtless in a great measure apply to him. The bankrupt may be *civiliter mortuus,* but he is not a decedent within the terms, intent, and meaning of the statute.

The assignee, then, being one of the persons required to give an appeal bond, it is scarcely conceivable that he can be relieved of that obligation by the mere fact that some other person may be benefited by the reversal of the decree. The bare statement of the proposition is its own refutation.

The statute only applies to those cases where the estate of a dead man is injuriously affected by a decree, and the appeal is taken by the personal representative to protect his estate.

This is not such a case, and we are of opinion that the ground is not well taken.

Again, it is insisted that the decree of June 2d, 1877, is not a final decree, and the reason assigned is, that the circuit judge afterwards addressed a letter to the clerk of the court giving him certain instructions with respect to the

manner of taxing the costs. A decree dismissing a bill with costs, upon the hearing, must of necessity be final, and if rendered in vacation, under the statute, takes effect from the time it is entered of record by the clerk. The judge pronouncing it cannot, if so inclined, by subsequent action impart to it a different character.

Here, however, the learned judge of the circuit court did not intend in any manner to modify the decree. His purpose was simply to instruct the clerk as to the proper manner of taxing the costs against the parties according to their respective liabilities. We are of opinion that this ground is not well taken.

It is further urged in behalf of the appellant, that in computing, the two years, the time which elapsed between the death of Granville T. Pace, the first assignee, and the appointment of the appellant, ought to be excluded.

In answer to this, it is perhaps sufficient to say, that the statutes defining and limiting the right of appeal make no such exception or reservation, and there is no rule or principle in law which authorizes the courts to do so. No doctrine is perhaps better settled than that when the statute has once begun to run, no subsequent disability will suspend its operation.

In this case, Granville T. Pace was alive at the date of the decree. The limitation then commenced to run, and so continued notwithstanding his death at a subsequent period.

It is conceded there are cases in which the statute may be suspended after it has commenced running; as, when the defendant brings a writ of error and thereby hinders the plaintiff from taking out executions. After judgment is affirmed, the plaintiff may-proceed to execution although the year has expired. The reason is, the writ of error being the defendant's own act, he shall not take advantage of it, nor can he be surprised by the delay because it was refer-

able to himself.  And the same reason applies with equal force where the defendant arrests the execution of the judgment by injunction.  *Hutsonpiller's Adm'r* v. *Stover's Adm'r,* 12 Gratt. 582.

And so, where the exercise of the plaintiff's right is stayed or suspended by the agreement of the parties, or the misconduct of the defendant, the latter will not be permitted to rely on the statute during the period of delay or suspension.  It is very true that when there is no person in existence capable of suing when the right of action accrues, the statute of limitation does not commence to run.  But if there be a person in existence capable of suing at the time a right of action accrues, the statute commences to operate, and having once begun, it is not suspended by death or other disability.

This is a well-settled rule, almost universally recognized and imposed by the courts, unless there be some statutory enactment to the contrary.  The limitation to appeals and writs of error is subject to but few exceptions, for reasons no doubt founded upon a sound public policy.  No suggestion of hardship, surprise, or accident, can avail in the least in defeating or suspending this limitation. If the party does not give the bond within the two years, whether he be in default two months or two days, the result must be the same—he must be dismissed the court.  There is no hardship in this, for the appellant has two whole years in which to make his application.  After delaying it one year and eleven months, he has no just cause to complain of want of time, or to attribute to surprise and accident that which is due to his own negligence.  In *Yarborough and Wife* v. *Deshazo,* 7 Gratt. 374, the appeal was dismissed because the bond was not given within the prescribed time by a single month.  Judge Allen, in delivering the opinion of the court, said: "Parties desiring to apply for appeals must make their applications in time, not only to

allow the court or judges to act upon it, but also to allow themselves time to file the record in the appellate court and to give the bond required." That case would seem to be decisive of this. For the reason stated, we think neither the grounds relied upon by the appellant, nor all of them combined, prevent the bar of the statute, and we have no alternative but to dismiss the appeal.

APPEAL DISMISSED.