Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
03/04/2016 09:16 AM CST

In re Conservatorship of Genevieve Franke, deceased.
Laurie Berggren, appellee, v. Genevieve Franke,
deceased, appellant, and John Franke, appellee.

___ N.W.2d ___

Filed March 4, 2016.    No. S-14-959.

1. **Guardians and Conservators: Appeal and Error.** An appellate court
   reviews guardianship and conservatorship proceedings for error appear-
   ing on the record in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors
   appearing on the record, an appellate court's inquiry is whether the deci-
   sion conforms to the law, is supported by competent evidence, and is
   neither arbitrary, capricious, nor unreasonable.
3. ____: ____. An appellate court independently reviews questions of law
   decided by a lower court.
4. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a
   factual dispute presents a question of law.
5. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component
   of a party's case because only a party who has standing may invoke the
   jurisdiction of a court.
6. **Actions: Parties: Death: Abatement, Survival, and Revival: Appeal
   and Error.** The statutory provisions regarding abatement and revivor of
   actions apply to cases in which a party dies pending an appeal.
7. ____: ____: ____: ____: ____. Whether a party's death abates an appeal
   or cause of action presents a question of law.
8. **Statutes.** Statutory interpretation presents a question of law.
9. **Abatement, Survival, and Revival: Words and Phrases.** The term
   "abatement" can refer to the extinguishment of a cause of action or the
   equitable suspension of suit for the lack of proper parties.
10. **Abatement, Survival, and Revival: Moot Question: Appeal and
    Error.** An abatement can also refer to the extinguishment of an appeal
    only when the legal right being appealed has become moot because of a
    party's death while the appeal was pending.

11. **Actions: Parties: Death: Abatement, Survival, and Revival**. Even if a party's death does not abate a cause of action, a substitution of parties may be required before the action or proceeding can continue.

12. ____: ____: ____: ____. Neb. Rev. Stat. § 25-322 (Reissue 2008) abrogates the common-law rule that all pending personal actions permanently abate on the death of a sole plaintiff or defendant, regardless of whether the cause of action on which it was based survived.

13. ____: ____: ____: ____. Under Neb. Rev. Stat. § 25-322 (Reissue 2008), a court may allow an action to continue after a party's death through a transfer of interests, if the cause of action survives the party's death.

14. **Actions: Parties: Death.** A deceased person cannot maintain a right of action against another or defend a legal interest in an action or proceeding.

15. **Attorney and Client: Death.** Although an attorney of a deceased client may have a duty to protect the client's interests by alerting a legal representative of his or her pending claim, absent a contractual agreement to the contrary, an attorney's representation of a client generally ends upon the death of that client.

16. **Actions: Parties: Death: Abatement, Survival, and Revival.** A deceased party's representative or successor in interest must either seek a conditional order of revival under chapter 25, article 14, of the Nebraska Revised Statutes or seek a court's substitution order under Neb. Rev. Stat. § 25-322 (Reissue 2008) before an action or proceeding can continue.

17. **Actions: Attorney and Client.** An attorney's unauthorized actions on the part of a deceased client are a nullity. So, unless a deceased client's legal representative or the client's contractual agreement authorizes the attorney to take or continue an action for the client, an attorney cannot take any further valid action in the matter.

18. **Guardians and Conservators: Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 30-1601(2) (Cum. Supp. 2014), a protected person's close family members have the right to appeal from a final order in a conservatorship proceeding if they filed an objection and the county court appointed a conservator.

19. **Actions: Parties: Death: Abatement, Survival, and Revival.** When a party dies pending an appeal, the general rule is that the death does not abate the cause of action or affect the underlying judgment.

20. **Estates: Guardians and Conservators.** A protected person's death terminates a conservator's authority and responsibility as conservator but does not affect the conservator's liability for acts taken before the death or the conservator's obligation to account for the protected person's funds and assets.

21. **Actions: Guardians and Conservators: Abatement, Survival, and Revival: Appeal and Error.** A protected person's death pending an appeal from a conservatorship proceeding does not abate the cause of action or affect the underlying orders appointing a conservator.

Appeal from the County Court for Hall County: Arthur S. Wetzel, Judge. Appeal dismissed.

Jordan W. Adam, of Fraser Stryker, P.C., L.L.O., for appellant.

Susan M. Koenig, of Mayer, Burns, Koenig & Janulewicz, for appellee Laurie Berggren.

Robert A. Mooney, of Gross & Welch, P.C., L.L.O., for appellee John Franke.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Stacy, JJ.

Connolly, J.

## SUMMARY

This appeal involves a dispute between Genevieve Franke's children regarding the county court's appointment of a conservator for her. Genevieve has since died. Genevieve's daughter, Laurie Berggren, sought the conservatorship after Genevieve agreed to sell her farmland to her son John Franke at a price below its fair market value.

Genevieve appealed from the court's appointment of Cornerstone Bank as her permanent conservator. John also appealed. But before the parties filed briefs, Genevieve's attorney filed a suggestion of death with the Nebraska Court of Appeals stating that Genevieve had died on December 31, 2014.

This appeal presents four issues. First, does Genevieve's attorney have standing to continue representing a deceased client in an appeal without authorization from Genevieve's legal representative? Second, does John have standing to appeal from the county court's appointment of a permanent conservator?

Third, if John does have standing, does Genevieve's death abate his appeal? And fourth, does Genevieve's death abate the cause of action and require this court to vacate the county court's orders appointing a conservator?

We reach the following conclusions:

• Genevieve's attorney has no standing to represent her in this court after her death.

• Under the Nebraska Probate Code, John had standing to appeal from the county court's appointment of a conservator because he objected to the proceeding and asked for an evidentiary hearing. But his standing on appeal is limited to whether Genevieve was in need of a conservator.

• Genevieve's death has abated John's appeal because her competency and need for a conservator are moot issues.

• Genevieve's death does not require us to remand the case with directions to the county court to vacate its order. We conclude that an abatement of an appeal in a conservatorship proceeding does not affect the validity of the final judgment or order from which a party or statutorily authorized person has appealed.

## BACKGROUND

Before Genevieve's death in 2014 at the age of 90, she had been a resident of a nursing home since November 2011. The catalyst for this dispute involved Genevieve's agreement to sell her farmland to John in 2013. According to John, in April 2013, he learned that some other farmland near his own property, which he had wanted to buy, would soon be auctioned. He asked Laurie if Genevieve had $400,000 to $500,000 to purchase it, and Laurie said Genevieve did not have enough liquid assets to do so. But Laurie, who took care of Genevieve's finances, authorized the bank to release Genevieve's financial information to John. He learned that Genevieve had $580,000 in investments and $780,000 in certificates of deposit. John drove Genevieve out to the property for viewing; he said that she authorized him to purchase it.

John said that he then met with Genevieve's accountant and attorney. The accountant told him that Genevieve wanted to purchase the land for him. They arranged for the purchase to be an asset of Genevieve's trust and limited the purchase price to $10,000 per acre of cropland. The plan called for John and his wife to make payments to the trust for the property. But for unexplained reasons, John did not purchase the property. He said that the irrigated cropland sold for about $7,500 to $7,800 per acre.

Before the auction, John had learned that under Genevieve's estate plan, at her death, he would have the first option to buy her property at its appraised value. But he said that he could not profitably farm the property if he had to buy it at its fair market value. He said that he was upset he could not buy the auctioned property near his own farm. So after the auction, but before Genevieve's death, he had multiple conversations with her about his purchasing her farmland, an asset of her trust. He said that Genevieve agreed to sell him her farmland and that her neighbor, who was John's close friend and Genevieve's tenant farmer, recommended the purchase price. John proposed to purchase Genevieve's property for about $3,600 to $3,700 per acre. In November 2013, Genevieve's "good quality irrigated" farmland, about 153 acres, was appraised at $1,653,000. The appraiser believed that the property's value in April 2013 would have been about the same.

Genevieve's longtime attorney and accountant were concerned Genevieve did not understand that there were tax consequences to this sale, that the proposed purchase price was well below the property's fair market value, and that the proposed sale was inconsistent with her continually expressed desire to treat her children equally. In June 2013, Laurie petitioned for the appointment of a conservator. John objected and requested an evidentiary hearing. The court appointed Laurie as Genevieve's temporary conservator with the limited duty to prevent the sale of the farm and preserve Genevieve's assets pending further order. After an evidentiary

hearing, it appointed Cornerstone Bank as Genevieve's permanent conservator.

As noted, before the parties filed briefs, Genevieve's attorney filed a suggestion of death with the Court of Appeals stating that Genevieve had died on December 31, 2014. The Court of Appeals then issued an order for the parties to show cause why the appeal should not be dismissed as moot. Genevieve's attorney, Laurie, and John all filed responses to this order. Laurie responded that the action was not moot because a conservator has continuing duties for the estate even after a protected person dies and because Genevieve's children still have an interest in a decision on her competency. Laurie stated that the "administration and ultimately the distribution of [Genevieve's] assets remain[] at issue."

Genevieve—not her personal representative—sought an order (through her attorney of record) to dismiss the appeal as moot *and* to vacate the county court's order appointing a permanent conservator. Two days later, John moved for an order reviving the appeal. Alternatively, he sought an order concluding that (1) the appeal was not moot but only abated by Genevieve's death and (2) the abatement required the county court to vacate all its previous orders in the proceeding. John claimed the right to file this motion as a person interested in Genevieve's conservatorship and as her successor in interest. We overruled both of these motions without prejudice and granted John's petition to bypass the Court of Appeals.

## ASSIGNMENTS OF ERROR

In Genevieve's appellate brief, her attorney assigned that the court erred in finding that she had mental or physical disabilities that rendered her unable to manage her property. Although John appealed also, he is designated an appellee and did not assign errors. In his brief, he has not argued that we should allow him to revive Genevieve's appeal, so we treat that request as abandoned. But he argues that because the conservatorship cause of action abated upon Genevieve's death,

this court should dismiss her appeal and remand the cause with directions for the county court to vacate all its orders in the proceeding.

## STANDARD OF REVIEW

[1,2] An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record in the county court.[1] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[2]

[3-8] But we independently review questions of law decided by a lower court.[3] A jurisdictional issue that does not involve a factual dispute presents a question of law.[4] And standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.[5] The statutory provisions regarding abatement and revivor of actions apply to cases in which a party dies pending an appeal.[6] Whether a party's death abates an appeal or cause of action presents a question of law.[7] Also, statutory interpretation presents a question of law.[8]

---

[1] *In re Guardianship & Conservatorship of Barnhart*, 290 Neb. 314, 859 N.W.2d 856 (2015).

[2] *Id.*

[3] *In re Guardianship of Brydon P.*, 286 Neb. 661, 838 N.W.2d 262 (2013).

[4] See *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

[5] *In re Guardianship & Conservatorship of Barnhart, supra* note 1.

[6] See, *Schumacher v. Johanns*, 272 Neb. 346, 722 N.W.2d 37 (2006); *Long v. Krause*, 104 Neb. 599, 178 N.W. 188 (1920); *Sheibley v. Nelson*, 83 Neb. 501, 119 N.W. 1124 (1909).

[7] See, e.g., *Sherman v. Neth*, 283 Neb. 895, 813 N.W.2d 501 (2012); *Bullock v. J.B.*, 272 Neb. 738, 725 N.W.2d 401 (2006); *Schumacher, supra* note 6; *Sheibley, supra* note 6.

[8] See *D.I. v. Gibson*, 291 Neb. 554, 867 N.W.2d 284 (2015).

## ANALYSIS

[9] The term "abatement" can have more than one meaning in law. It can refer to the extinguishment of a cause of action or the equitable suspension of suit for the lack of proper parties:

[T]here is a distinction between the use of the word "abatement" in common law, where it means an entire overthrow or destruction of a suit, and in equity courts, where abatement may indicate rather a temporary suspension of further proceedings in the suit because of want of proper parties.[9]

[10] Additionally, as we explain later, an abatement can refer to the extinguishment of an appeal only when the legal right being appealed has become moot because of a party's death while the appeal was pending. This appeal raises the issue whether a protected person's death pending an appeal from a conservatorship appointment abates only the appeal or the entire cause of action. John argues that it abates the entire cause of action, which means that we must vacate the lower court's orders. But first, we consider the standing of Genevieve's attorney to continue her appeal.

### Genevieve's Appeal

After Genevieve's attorney filed a suggestion of death, he filed an appellant's brief on her behalf. He argues that because the conservatorship proceedings involved purely personal rights, Genevieve's appeal is moot due to her death and should be dismissed. Yet, he asks this court to vacate the county court's conservatorship orders. He notes that some courts have held that when a party who has been adjudicated

---

[9] *In re Estate of Samson*, 142 Neb. 556, 561, 7 N.W.2d 60, 62 (1942) (superseded by statute as stated in *In re Estate of Stephenson*, 243 Neb. 890, 503 N.W.2d 540 (1993), *overruled in part on other grounds, Knights of Columbus Council 3152 v. KFS BD, Inc.*, 280 Neb. 904, 791 N.W.2d 317 (2010)). See, also, *Fox v. Abbott*, 12 Neb. 328, 11 N.W. 303 (1882); Black's Law Dictionary 3 (10th ed. 2014).

as mentally incompetent dies during the pendency of an appeal, the abatement of the appeal requires the lower court's orders to be vacated. Despite his claim that the issue is moot, he also argues that the evidence was insufficient to show Genevieve needed a conservator. We conclude that Genevieve's attorney lacks standing to seek any relief on her behalf.

[11-13] Even if a party's death does not abate a cause of action, a substitution of parties may be required before the action or proceeding can continue. Neb. Rev. Stat. § 25-322 (Reissue 2008) abrogates the common-law rule that "all pending personal actions permanently abate on the death of a sole plaintiff or defendant, regardless of whether the cause of action on which it was based survived."[10] But under § 25-322, a court may allow an action to continue after a party's death through a transfer of interests, if the cause of action survives the party's death:

An action does not abate by the death or other disability of a party, or by the transfer of any interest therein during its pendency, if the cause of action survives or continues. In the case of the death or other disability of a party, the court may allow the action to continue by or against his or her representative or successor in interest. In case of any other transfer of interest, the action may be continued in the name of the original party or the court may allow the person to whom the transfer is made to be substituted in the action.

[14-16] Through § 25-322, the Legislature anticipated that a substitution of a legal representative or successor in interest is required when a party dies, before the action can continue. This substitution is required because a deceased person cannot maintain a right of action against another[11] or defend a legal interest in an action or proceeding.[12] Although an attorney of a

---

[10] See 1 Am. Jur. 2d *Abatement, Survival, and Revival* § 44 at 129 (2005).

[11] See Neb. Rev. Stat. § 25-1410 (Reissue 2008).

[12] See Neb. Rev. Stat. § 25-1411 (Reissue 2008).

deceased client may have a duty to protect the client's interests by alerting a legal representative of his or her pending claim, absent a contractual agreement to the contrary, an attorney's representation of a client generally ends upon the death of that client.[13] And a deceased party's representative or successor in interest must either seek a conditional order of revival under chapter 25, article 14, of the Nebraska Revised Statutes or seek a court's substitution order under § 25-322 before an action or proceeding can continue.[14]

[17] In short, even if a legal right is not abated by a party's death, Nebraska's abatement laws would require a suspension of an action or proceeding until an appropriate representative is substituted by court order through one of the statutory procedures. An attorney's unauthorized actions on the part of a deceased client are a nullity.[15] So, unless a deceased client's legal representative or the client's contractual agreement authorizes the attorney to take or continue an action for the client, an attorney cannot take any further valid action in the matter.[16]

Here, even if the legal right that Genevieve had defended (her competency to manage her own affairs) were not abated by her death, her appeal could only be continued by someone statutorily authorized to represent her interests. Her attorney is not her personal representative or her successor in interest. He stated at oral argument that a county court in a separate trust proceeding authorized him to continue this appeal. But he has not asked us to take judicial notice of such order or explained the legal grounds for the purported authorization. He has not

---

[13] See, *State ex rel. Counsel for Dis. v. James*, 267 Neb. 186, 673 N.W.2d 214 (2004); *Long, supra* note 6.

[14] See *Platte Valley Nat. Bank v. Lasen*, 273 Neb. 602, 732 N.W.2d 347 (2007).

[15] See *Long, supra* note 6.

[16] See, *id.*; *Schaeffler v. Deych*, 38 So. 3d 796 (Fla. App. 2010); 7A C.J.S. *Attorney & Client* § 335 (2015).

claimed an interest in this action or shown that Genevieve contractually authorized him to continue her appeal even if she died. We conclude that Genevieve's attorney has no authority to continue her appeal and no interest in the litigation. Accordingly, he lacked standing to file a brief and seek relief for her. So we dismiss Genevieve's appeal.

## John's Appeal

In contrast to Genevieve's attorney, her son John has standing to appeal the court's appointment of a conservator. Under Neb. Rev. Stat. § 30-1601(2) (Cum. Supp. 2014), an appeal from a probate matter "may be taken by any party and may also be taken by any person against whom a final judgment or final order may be made *or* who may be affected thereby." The statute sets forth the requirements for filing an appeal in the alternative. So § 30-1601(2) gives John standing to appeal if he had an interest that was affected by the order *or* if the order was final with regard to any objections he raised. But because § 30-1601(2) directly refers to a final order, he still must show that the order affected a substantial right.

John must show that the order affected a substantial right because proceedings initiated to appoint a guardian of a person alleged to be incapacitated and to appoint a conservator are special proceedings.[17] And under Neb. Rev. Stat. § 25-1902 (Reissue 2008), an order in a special proceeding is final only if it affects a substantial right. But under § 25-1902, we have held that an order that disposes of every issue before a court is necessarily a final order.[18]

[18] The conservatorship statutes do not explicitly authorize any person to object to a conservator appointment. But as relevant here, they do require notice of a petition for a conservator to the subject's adult children and a hearing

---

[17] See *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006).

[18] See *Big John's Billiards v. State*, 283 Neb. 496, 811 N.W.2d 205 (2012).

before making an appointment.[19] And this court has previously decided appeals from family members who objected to a conservatorship appointment.[20] So, under our implicit interpretation of § 30-1601(2), a protected person's close family members have the right to appeal from a final order in a conservatorship proceeding if they filed an objection and the county court appointed a conservator. Although John is not a party, the right to appeal under § 30-1601(2) is not limited to parties. John filed an objection and requested an evidentiary hearing. So, under the probate code's generous appeal statute, he is a person against whom a final order was entered and has the right to appeal.

Nonetheless, John only has standing to address the sole issue resolved in the final order, which is Genevieve's need for a conservator. But that issue is mooted by her death. Although all the appellate attorneys asserted at oral argument that there is a separate, pending trust proceeding, neither party has asked us to take judicial notice of a proceeding that shows the issue of Genevieve's competency is not moot. Because the issue appealed is moot, we conclude that Genevieve's death has abated John's appeal.[21] He does not dispute that point. But he argues that the abatement on appeal requires us to vacate the county court's previous orders appointing a conservator. Not so.

There is a distinction between a party's death that abates an appeal and a party's death that abates a cause of action. But courts have not always been clear on this point. In early cases, if an appeal called for a trial de novo, perfecting the appeal vacated the judgment, or the judgment was treated as

---

[19] See Neb. Rev. Stat. §§ 30-2630 to 30-2635 (Reissue 2008 & Cum. Supp. 2014).

[20] See, e.g., *In re Guardianship & Conservatorship of Karin P.*, 271 Neb. 917, 716 N.W.2d 681 (2006); *Winters v. Lange*, 197 Neb. 157, 247 N.W.2d 617 (1976).

[21] See *Sherman, supra* note 7, citing 4 C.J.S. *Appeal and Error* § 343 (2007).

interlocutory. But if review was sought through a writ of error, the judgment was not vacated; it was suspended.[22] So a party's death pending a writ of error proceeding did not vacate or annul the judgment reviewed. Unless the judgment was reversed on appeal, it remained in effect and was res judicata between the parties.[23] Over time, however, this distinction was lost and considerable confusion developed whether a party's death pending an appeal abated the appeal or the entire action.[24] Our case law illustrates this point.

For example, in 1927, we considered a case in which a husband died pending a wife's appeal of a marital dissolution decree.[25] At that time, our review of a dissolution decree was a trial de novo and a divorce precluded a spouse from taking insurance benefits from a former spouse. We stated that the decree was interlocutory—i.e., not final until we issued a decision—and concluded that the husband's death had abated the action and annulled the judgment, as if he had died before the trial court entered the decree. So the wife was not precluded from taking the husband's insurance benefits.

But we no longer treat marital dissolution decrees as interlocutory or review them in a trial de novo. If an order or decree were not final, we would dismiss the appeal for lack of jurisdiction.[26] And our disposition in a later case dealing with the same issue showed that we concluded the party's death pending his appeal abated the appeal, not the action.

Specifically, in 1945, we again considered a case in which a husband died pending appeal from a marital dissolution

---

[22] See, *In re Estate of Marsh*, 145 Neb. 559, 17 N.W.2d 471 (1945); Annot., 148 A.L.R. 1111 (1944).

[23] See, 148 A.L.R., *supra* note 22; *Green v. Watkins*, 19 U.S. (6 Wheat.) 260, 5 L. Ed. 256 (1821).

[24] See 148 A.L.R., *supra* note 22; Annot., 33 A.L.R.4th 47, § 2[b] (1984).

[25] See *Westphalen v. Westphalen*, 115 Neb. 217, 212 N.W. 429 (1927).

[26] See, e.g., *Gerber v. Gerber*, 218 Neb. 228, 353 N.W.2d 4 (1984).

decree.[27] There, we denied a special administrator's motion on appeal to revive the husband's appeal for review of the decree's requirement that he pay alimony. We repeated the rule that a dissolution decree was interlocutory. And we concluded that the death of one of the parties destroys the subject matter of the decree, including matters of alimony and property rights, which we described as only incidental to the main object of the action. But despite this broad language that the *action* was extinguished, we only denied the motion for revivor and dismissed the appeal. We did not hold that the decree was annulled, nor did we remand the cause for the lower court to vacate its decree. So, our disposition showed that the appeal was abated—not the action.

Later, our disposition in another case dealing with a party's death pending appeal from a probate judgment similarly showed that the party's death abated only the appeal. There, a surviving spouse appealed from an order denying him a statutory allowance, a homestead exemption, and the decedent's personal property, but he died pending appeal. We decided the case after the Legislature had amended the probate statutes to allow a surviving spouse's petition for allowances or an elective share to survive the surviving spouse's death,[28] but the parties apparently did not raise the statute. We concluded that the asserted rights did not survive the appellant's death: "[T]he rights in question, being personal to the surviving spouse, terminated upon his death as did the cause of action. . . . It is fundamental that when a party to a pending suit dies and the right is personal in nature, the right dies with the person."[29] But our statement that the cause of action terminated with the appellant's death clearly meant that the

---

[27] See *Williams v. Williams*, 146 Neb. 383, 19 N.W.2d 630 (1945).

[28] See *In re Estate of Stephenson, supra* note 9.

[29] *Jacobson v. Nemesio*, 204 Neb. 180, 183, 281 N.W.2d 552, 554 (1979) (superseded by statute as stated in *In re Estate of Stephenson, supra* note 9).

cause of action died from that point forward; i.e., his death abated the appeal. The abatement obviously did not extinguish the entire action or annul the order denying his asserted legal rights.

It is true that in *Sherman v. Neth*,[30] we determined that because a party's death pending appeal from an administrative license revocation abated the appeal, we should vacate the proceedings in the lower court. John relies on *Sherman* and a 1939 Missouri conservatorship case.[31] The Missouri case was one of the cases that we cited in *Sherman* to show courts will sometimes vacate a lower court's judgment if the right asserted on appeal was strictly personal. John also cites another Missouri case and a New York case.[32] In those cases, the court held that a protected person's death pending appeal from a mental incompetency order abates not just the appeal but the cause of action. But we decline to extend *Sherman* or to follow the cases that John cites for three reasons.

First, in *Sherman*, we were clearly concerned that the Court of Appeals had already issued a decision on a new question of law that we could not review—because we concluded that applying the public interest exception was inappropriate in that circumstance. So our inability to review the Court of Appeals' precedent was a unique circumstance that is not presented here. The county court's orders are not precedent for any other court, and final orders and judgments have no preclusive effect if appellate review of them is denied as a matter of law.[33]

[19] Second, in modern decisions by state courts explicitly deciding the effect of a party's death pending an appeal,

---

[30] *Sherman, supra* note 7.

[31] See *Gee v. Bess*, 132 S.W.2d 242 (Mo. App. 1939).

[32] See, *Moberly v. Powell and Walker*, 229 Mo. App. 857, 86 S.W.2d 383 (1935); *Matter of Thomas v. Baumeister*, 21 N.Y.2d 720, 234 N.E.2d 705 (1967).

[33] See Restatement (Second) of Judgments § 28(1) (1982).

the general rule is that the death does not abate the cause of action or affect the underlying judgment.[34] These courts have frequently reasoned that under the doctrine of merger, an action does not abate when a party dies after the final judgment. Under that doctrine, a cause of action merges into the final judgment, thus extinguishing the cause of action and barring a subsequent action for the same cause.[35] And some of our case law is consistent with the rule that a party's death pending appeal does not abate the cause of action or affect the final judgment.

Third, unlike the license revocation issue appealed in *Sherman*, the legal right at stake in a conservatorship appeal is not solely the protected person's status. Vacating the county court's orders could leave a conservator exposed to liability. And the conservatorship cases from other jurisdictions that John cites were decided before the Legislature enacted the Nebraska Probate Code in 1974.[36]

[20] We have stated that a protected person's death terminates a conservator's authority and responsibility as conservator but does not affect the conservator's liability for acts taken before the death or the conservator's obligation to account for the protected person's funds and assets.[37] And those continuing

---

[34] See, e.g., *Kaufman v. Kaufman*, 22 So. 3d 458 (Ala. Civ. App. 2007); *Variety Children's Hospital, Inc. v. Perkins*, 382 So. 2d 331 (Fla. App. 1980); *Tunnell v. Edwardsville Intelligencer*, 43 Ill. 2d 239, 252 N.E.2d 538 (1969); *Goldstein v. Feeley*, 299 S.W.3d 549 (Ky. 2009); *Simpson v. Strong*, 234 S.W.3d 567 (Mo. App. 2007); *Acito v. Acito*, 72 A.D.3d 493, 898 N.Y.S.2d 133 (2010); *Albrecht v. Albrecht*, 856 N.W.2d 755 (N.D. 2014); *Black v. Black*, 673 S.W.2d 269 (Tex. App. 1984); *Gordon v. Hillman*, 102 Wash. 411, 173 P. 22 (1918); 1 C.J.S. *Abatement and Revival* § 139 (2005); 1 Am. Jur. 2d, *supra* note 10, § 58. But see *Panter v. Panter*, 499 A.2d 1233 (Me. 1985).

[35] See 46 Am. Jur. 2d *Judgments* §§ 451 and 452 (2006).

[36] See *In re Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87 (2009).

[37] See *In re Guardianship & Conservatorship of Trobough*, 267 Neb. 661, 676 N.W.2d 364 (2004).

obligations mean that a conservator could also be liable for actions taken after a protected person's death. Under Neb. Rev. Stat. § 30-2654(e) (Reissue 2008), a conservator has the duty to wind up the conservatorship and deliver the estate to an appointed personal representative.

A conservator's potential liability exists because title to both real and personal property passes immediately upon death to a decedent's devisees or heirs, subject to administration, allowances, and a surviving spouse's elective share.[38] Additionally, the Nebraska Probate Code authorizes nontestamentary, nonprobate transfers on death, including transfers through trusts.[39] So a conservator could take actions that directly conflict with the interests of heirs, devisees, and beneficiaries of nontestamentary transfers. This could happen, for example, if a conservator takes or retains property of the protected person to pay for administration costs or attorney fees during the conservatorship.[40]

But if the death of a protected person pending an appeal rendered a conservator's appointment void, by what authority would the conservator have acted before or after the protected person's death? Concluding that the death abated the action ab initio would call into question the conservator's actions and create unnecessary disputes and litigation. So here, there is good reason to follow the general rule that a party's death after a final judgment does not extinguish the cause of action or affect the underlying judgment.

[21] Finally, although the parties here have failed to show that this appeal is not moot, we recognize that conservatorship proceedings for elderly persons are frequently prompted by the elderly person's land or financial transactions that

---

[38] *Wilson v. Fieldgrove*, 280 Neb. 548, 787 N.W.2d 707 (2010).

[39] *In re Estate of Chrisp, supra* note 36; 1993 Neb. Laws, L.B. 250.

[40] See, e.g., *Naito v. Naito*, 125 Or. App. 231, 864 P.2d 1346 (1993); *In re Estate of Briley*, 16 Kan. App. 546, 825 P.2d 1181 (1992).

threaten the person's well-being or affect his or her heirs or family members who have contributed to the assets.[41] As stated, dismissing an appeal as moot because of the protected person's death pending appeal would not render the conservatorship order conclusive in another action. But the interests of judicial economy would often be better served by deciding an appeal from a final adjudication of incompetency if the parties showed that the issue was not moot. So, we hold that a protected person's death pending an appeal from a conservatorship proceeding does not abate the cause of action or affect the underlying orders appointing a conservator.

But because Genevieve's competency is a moot issue, her death extinguishes this appeal.

## CONCLUSION

We conclude that after Genevieve's death pending her appeal, her appeal could be continued only by someone statutorily authorized to represent her interests. Because her attorney has not shown any interest in the litigation or authorization to continue her appeal, he lacks standing to seek any relief on her behalf. We therefore dismiss Genevieve's appeal.

We conclude that Genevieve's son John has standing under § 30-1601(2) to appeal from the county court's appointment of a conservator for Genevieve because he filed an objection and asked for an evidentiary hearing. His standing on appeal is limited, however, to challenging the court's finding that Genevieve was in need of a conservator. That issue is abated by Genevieve's death.

But Genevieve's death abates only John's appeal. It does not abate the cause of action or affect the validity of the county court's orders appointing a conservator.

APPEAL DISMISSED.

---

[41] See, e.g., 6 Causes of Action 2d 625, § 7 (1994).